IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| L.L., individually and on behalf of J.L., a minor,<br><br>    Plaintiff,<br><br>vs.<br><br>ANTHEM BLUE CROSS LIFE and HEALTH INSURANCE, DLA PIPER LLP, and the DLA PIPER WELFARE BENEFIT PLAN,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DISMISSING PLAINTIFF'S SECOND AND THIRD CAUSES OF ACTION<br><br>Case No. 2:22CV208-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Anthem Blue Cross Life and Health Insurance Company's ("Anthem") Partial Motion to Dismiss Complaint and on Defendants DLA Piper LLP and the DLA Piper Welfare Benefit Plan's (together referred to as "DLA Piper") Motion to Dismiss Plaintiff's Second and Third Causes of Action. On December 21, 2022, the court held a hearing on the two motions. At the hearing, Brent J. Newton represented Plaintiff, Nathan R. Marigoni and Angela Shewan represented Anthem, and Heather L. Richardson, Jennafer Tryck, and Scott M. Petersen represented DLA Piper. At the conclusion of the hearing, the court took the motions under advisement. The court has carefully considered the memoranda filed by the parties, the arguments made by counsel at the hearing, and the law and facts pertaining to the motions. Now being fully advised, the court issues the following Memorandum Decision and Order granting Anthem's Partial Motion to Dismiss and DLA Piper's Motion to Dismiss Plaintiff's Second and Third Causes of Action.

Plaintiff L.L. filed this Complaint individually and on behalf of his minor daughter, J.L. Plaintiff has asserted three causes of action under ERISA: (1) Recovery of Benefits under 29 U.S.C. § 1132(a)(1)(B); (2) Violation of the Mental Health Parity and Addiction Equity Act (the "Parity Act") under 29 U.S.C. § 1132(a)(3); and (3) Request for Statutory Penalties under 29 U.S.C. §§ 1132(a)(1)(A) and 1132(c). The first cause of action for Recovery of Benefits is not at issue in these motions. Defendants have moved to dismiss only the Second and Third Causes of Action for failure to state a claim upon which relief may be granted.

Defendant Anthem is the third-party claims administrator, Defendant DLA Piper Welfare Benefit Plan (the "Plan"), is a self-funded employee welfare benefits plan, and Defendant DLA Piper LLP is L.L.'s employer and designated administrator of the Plan.  Collectively, these three parties will be referred to as "Defendants."

**FACTUAL BACKGROUND[1]**

J.L. received medical care and treatment at Wingate Wilderness Therapy ("Wingate") from June 7, 2019, to August 5, 2019. Wingate is a licensed treatment facility located in Kane County, Utah. It provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems. J.L. was admitted to Wingate to address issues related to depression, anxiety, self-harm, suicidality, anger, drug abuse, and school performance.

In a letter dated December 21, 2020, Anthem denied payment for J.L.'s treatment, stating that:

---

[1] The following facts are assumed to be true for purposes of deciding the instant Motion to Dismiss.

2

> This treatment is not approvable under the plan clinical criteria because there is no proof or not enough proof it improves health outcomes. For this reason, the request is denied as investigational and not medically necessary. There may be other settings to help you, such as outpatient treatment. You may want to discuss these with your doctor. It may help your doctor to know we reviewed this request using the plan medical policy Wilderness Programs.

On February 24, 2021, Plaintiff appealed the denial of benefits, highlighting his various objections to the denial. In a letter dated May 11, 2021, however, Anthem upheld the denial of J.L.'s claim, referring to provisions of the Plan that exclude investigational treatment. The letter also informed Plaintiff that Anthem had sent the claim to an external reviewer, who was board certified and specializes in psychiatry, and this reviewer had also recommended upholding the denial. The letter further stated that the reviewer had examined all the information provided with the initial claim, as well as a voluminous record of materials that Plaintiff had provided with his appeal, and concluded that the treatment is "not approvable under the [P]lan clinical criteria because there is no proof or not enough proof that it improves health outcomes." The appeal letter also explained that the denial was based on Anthem's medical policy entitled "Wilderness Programs."

Plaintiff then requested evaluation by an external review agency, and he included a Practical Comprehensive Summary conducted at Wingate and a Confidential Psychological Assessment. These documents recommended that J.L. be treated in a therapeutic environment like Wingate to best address the treatment of her mental health and substance abuse issues. The psychological assessment even recommended that J.L. go on to receive additional residential treatment following her stay at Wingate. But, in a letter dated November 24, 2021,

Plaintiff was informed that the external reviewer had affirmed Anthem's claim decision to deny payment. The reviewer wrote that wilderness programs "continue to be the subject of ongoing research and study" but opined that they were not widely accepted as proven and effective. Plaintiff exhausted his prelitigation appeal obligations under the terms of the Plan and ERISA.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "The burden is on the plaintiff to 'frame a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma ex rel. Dept. of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). The allegations in the complaint must be "more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Id.* (citation omitted). In addition, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). In other words, once a plaintiff adequately states a claim for relief, he or she "must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (alteration in original) (citation omitted).

## DISCUSSION

**I. PARITY ACT CLAIM**

Defendants argue that Plaintiff's Parity Act claim should be dismissed because it fails to allege facts to support all of the elements of the claim. Specifically, Anthem asserts that Plaintiff did not plead facts demonstrating an improper disparity in coverage for mental healthcare services. The Parity Act provides that treatment limitations placed on mental health and substance use disorder conditions should be no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical conditions in the same classification. Here, Defendants contend that Plaintiff's Parity Act claim rests on bare conclusory allegations that fall short of satisfying Plaintiff's pleading obligations under Federal Rules 8 and 12(b)(6) because it alleges no facts regarding comparison to medical or surgical conditions.

"The Tenth Circuit has not promulgated a test to determine what is required to state a claim for a Parity Act violation, and district courts have presented varying analyses." *Nancy S. v. Anthem Blue Cross and Blue Shield*, No. 2:19-cv-00231-JNP-DAO, 2020 WL 2736023, at *3 (D. Utah May 26, 2020). However, several judges within the District of Utah have adopted a three part test, whereby a plaintiff asserting a Parity Act claim must (1) identify a specific treatment limitation on mental health benefits; (2) identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which the plaintiffs seek benefits; and (3) plausibly allege a disparity between the treatment limitation on mental health benefits as compared to the limitations that defendants would apply to the covered medical/surgical analog. *Id*. (citing *David P. v. United Healthcare Ins. Co.*, No. 2:19-cv-00225-JNP-PMW, 2020 WL

607620, at *15 (D. Utah Feb 7, 2020)); *James C. v. Anthem Blue Cross and Blue Shield*, No. 2:19-cv-38-CW, 2021 WL 2532905, at *18 (D. Utah June 21, 2021).

In this case, Plaintiff identifies two treatment limitations—medical necessity and licensing/accreditation requirements—that he alleges violated the Parity Act. Second, he identifies three allegedly analogous medical/surgical benefits: (1) skilled nursing facilities; (2) inpatient hospice care; and (3) rehabilitation facilities. And finally, Plaintiff alleges three ways Anthem violated the Parity Act: (1) Anthem excludes wilderness programs for mental health/substance use disorder benefits but not for analogous medical/surgical benefits; (2) Anthem violated the Parity Act when the external reviewer determined that J.L. did not meet clinical criteria for residential treatment; and (3) the Plan's accreditation and licensing requirements, which were not alleged to have been a basis for denial in this case, are too stringent for covered mental health/substance use disorders.

To demonstrate a disparity, Plaintiff "must analyze the guidelines and limitations that Defendants place on coverage for sub-acute medical or surgical treatment and compare them to the guidelines and limitations placed on analogous sub-acute residential mental health treatment." *Kurt W. v. United Healthcare Ins. Co.*, No. 2:19-cv-23-CW, 2019 WL 6790823, at *6 (D. Utah Dec. 12, 2019). In other words, Plaintiff must plead facts "regarding how [the claims administrator] handles medical and surgical claims;" he cannot "simply allege summarily that it treats the two types of claims differently." *Michele T. v. Oxford*, No. 19-50, 2020 WL 4596961, at *5 (D. Utah Aug. 22, 2020).

Defendants argue that Plaintiff has failed to properly allege any treatment disparity, and therefore, the Parity Act claim must be dismissed. Although Plaintiff asserts that the Plan does not exclude wilderness programs for any medical/surgical benefits but does for mental health/substance use disorder benefits (Compl. ECF No. 2 at ¶¶ 59-62), this assertion contradicts the medical policy upon which Anthem relied, which excludes wilderness programs for *all* benefits. Specifically, the medical policy Anthem relied upon expressly applies to any wilderness program that is "proposed as a treatment option for . . . medical conditions or behavioral health disorders." (Anthem's Mem. in Opp'n, ECF No. 24, Ex. B).

In addition, the Plan requires that all covered services be medically necessary and not investigational. (Anthem's Mem. in Opp'n, ECF. No. 24, Ex. A at 4). Investigational services are those that "are not widely accepted as proven and effective within the organized medical community." (*Id.*, Ex. A at 78). Anthem's "Medical Policy & Technology Assessment Committee (MPTAC)," after reviewing various research studies and the medical community's positions, determined that wilderness programs do not meet the Plan's definition of medical necessity because they are investigational. (*Id.*, Ex. B at 3-5). This policy applies to all wilderness programs, whether the program is intended to treat "medical conditions" or "behavioral health disorders" (*id.*, Ex. B at 1), specifically referencing treatment for traumatic brain injuries (a medical condition) and residential treatment facilities (behavioral health facilities). (*Id.*, Ex. B at 2). Thus, when a program seeks payment under a "[t]herapeutic camping" billing code, it is considered investigational for "[a]ll diagnoses," including all behavioral health and medical/surgical diagnoses. (*Id.*, Ex. B at 3).

7

Defendants point out that, as further evidence that this policy applies to medical conditions, it cross-references clinical criteria for various medical/surgical conditions that require physical or occupational therapy. (*Id.*, Ex. B at 1). In other words, contrary to Plaintiff's assertion, the wilderness program medical policy applies to all benefits and, as a result, does not plausibly allege a disparity in treatment limitations that could constitute a Parity Act violation.

In sum, Plaintiff fails to offer any factual allegations to support the conclusion that Anthem imposes a different standard when assessing whether intermediate level mental health benefits are investigational and when analogous medical or surgical benefits are investigational. Many of Plaintiff's allegations related to the Parity Act claim appear to be based on Plaintiff's contention that wilderness programs are not investigational. In other words, Plaintiff believes that Anthem's experts were simply wrong when they determined that wilderness programs "are not widely accepted as proven and effective within the organized medical community." (Compl., ECF No. 2, ¶¶ 17-20, 22-25, 61-62). But allegations that assert an incorrect benefit determination do not plausibly allege a Parity Act violation because these types of allegations "do not relate to an analogous treatment in the medical or surgical setting." *Kerry W. v. Anthem Blue Cross and Blue Shield*, No. 2:19-cv-67, 2019 WL 2393802, at *4 (D. Utah June 6, 2019). Put differently, Plaintiff's assertions that wilderness programs are not investigational based on the opinions of their experts, national available billing codes, and external reviews are properly asserted as a claim for benefits—as Plaintiff has alleged in his First Cause of Action—but not as a Parity Act violation.

Plaintiff next asserts that Anthem violated the Parity Act when an external review determined that J.L. did not meet the clinical criteria for residential treatment. In other words, Plaintiff argues that the external reviewer improperly applied *acute* medical necessity criteria for J.L.'s *sub-acute* care. But, as Defendants point out, the external reviewer's decision to determine whether J.L. met the clinical criteria for residential treatment, which is not the basis on which Anthem denied benefits, cannot be attributed to Anthem.  Any improper use of acute criteria by the external reviewer cannot be a basis for finding a Parity Act violation when Anthem determined that wilderness programs are investigational and excluded under the Plan—not that J.L. failed to meet medical necessity under the clinical criteria for residential treatment.  As Plaintiff alleges, Anthem denied benefits for J.L.'s treatment at Wingate because wilderness programs are investigational and thus not medically necessary under the Plan.  The external reviewer's decision to find an additional ground for upholding Anthem's denial does not provide a basis for finding that Anthem violated the Parity Act. Because Anthem did not rely on the residential treatment clinical criteria to deny payment of benefits, Plaintiff cannot trace any claimed injury to the asserted disparity in the residential treatment criteria. In sum, Anthem did not rely on the residential treatment clinical criteria as the basis for denying J.L.'s request for benefits at Wingate.

Finally, Plaintiff asserts that Anthem improperly denied benefits at Wingate because it does not "categorically exclude analogous medical or surgical services" that are "licensed under state law." (Compl., ECF No. 2 at ¶ 60). Plaintiff contends that Anthem imposes additional licensing and accrediting requirements for mental health benefits than it does for

9

medical/surgical benefits. (*Id*. ¶ 68). As Defendants argue, however, not only does the Plan require that all providers and facilities be licensed and accredited by an appropriate accrediting body, but also, a lack of licensing or accreditation was not the basis for the denial of benefits in this case. To the extent there are differences in the licensing and accreditation requirements for mental health facilities that are different from those applicable to medical/surgical treatment settings, Defendants point out that Plaintiff has failed to plausibly allege that any such requirements for mental health settings are more restrictive as would be necessary to allege an actionable disparity under the Parity Act. Accordingly, this argument does not support a Parity Act violation.

**II.  Statutory Penalties**

In the Third Cause of Action, Plaintiff seeks statutory penalties under 29 U.S.C. § 1132(c) for Anthem's alleged failure to produce requested Plan documents. (Compl., ECF No. 2 at ¶¶ 73-75). Under ERISA, plan administrators are required to provide certain documents to a plan participant or beneficiary within 30 days of a written request. 29 U.S.C. § 1024(b)(4). These documents include the most updated "summary plan description" and "instruments under which the plan is established or operated." *Id*. If the plan administrator does not provide copies of these "Plan documents," a court "may assess a daily penalty to the plan administrator." *William S. v. NASDAQ OMX Flexible Benefits Program*, No. 2:13-cv-00125-DN, 2014 WL 5819561, at *5 (D. Utah Nov. 10, 2014). The maximum daily penalty is $110. *Id*.

Defendants argue that Plaintiff's claim for statutory penalties should be dismissed with prejudice because it is undisputed that Anthem is not the designated "plan administrator" for

the Plan. The "plan administrator" is DLA Piper, and it is well established that only the designated plan administrator can be held liable for statutory penalties under 29 U.S.C. § 1132(c). Moreover, DLA Piper, as the plan administrator, cannot be held liable for statutory penalties under 29 U.S.C. § 1132(c) because Plaintiff does not allege that he ever made any document request to DLA Piper.[2]

In *David P. v. United Healthcare Ins. Co.*, No. 2:19-cv-225-JNP-PMW, 2020 WL 607620, at *20 (D. Utah Feb. 7, 2020), the court dismissed a nearly identical claim to that advanced by Plaintiff here. In *David P.*, the plaintiffs directed their documents to United Healthcare, the claims administrator, and not to MSCHRO, the plan administrator. The court expressly rejected the very argument Plaintiff advances here—that the claims administrator was acting as an "agent" of the plan administrator, and that therefore, liability could be imputed to the plan administrator. *See id.; see also Thorpe v. Ret. Plan of Pillsbury Co.*, 80 F.3d 439, 444 (10th Cir. 1996) ("finding that [s]uch causes of action may be brought only against designated plan administrators."). The court in *David P.* held that the claims administrator and plan administrator were "separate companies, and beyond conclusory allegations that United is an 'agent' of MSCHRO . . . Plaintiffs have not identified why the actions (or inaction) of United may be imputed to MSCHRO." *Id.*

---

[2] Defendants also contend that this claim can also be dismissed on the separate basis that the documents Plaintiff allegedly requested from Anthem are not among those enumerated in 29 U.S.C. § 1024(b)(4), and for which a failure to produce would subject a plan administrator to penalties. The court declines to rule on this basis.

11

Plaintiff, however, argues that "courts in this District have . . . refused to dismiss ERISA statutory penalty cases where plaintiffs alleged that the third-party claim administrator was acting as the agent of the plan administrator." *Julian B. v. Regence Blue Cross & Blue Shield of Utah*, No. 2:19-cv-471-TC 2020, 2020 WL 1955222, at *6. Plaintiff asserts that, just as the court found in *Julian B.*, the question of whether Anthem was acting as the Plan's agent is a question of fact, which the court cannot decide on a motion to dismiss.

But Plaintiff offers no factual allegations to support any agency relationship between DLA Piper and Anthem, which are two separate legal entities. Moreover, unlike the situation in *Julian B.*, however, the Plan itself provides that "[i]n no event will the *claims administrator* be *plan administrator* for purposes of compliance with . . . [ERISA]." (Anthem Memo. in Opp'n, ECF No. 24, Ex. A at 72; see also Ex. A at 91, 93-94). Accordingly, 29 U.S.C. § 1132(c) provides no remedy against Anthem. The law is clear in this circuit that neither DLA Piper nor Anthem may be held liable under 29 U.S.C. § 1132(c) for statutory penalties where Plaintiff has made a § 1024(b)(4) document request to the third-party claims administrator, Anthem, and not to the designated Plan administrator, DLA Piper. *See Thorpe v. Ret. Plan of Pillsbury Co.*, 80 F.3d 439, 444 (10th Cir. 1995) (affirming district court dismissal of penalties claim because "Plaintiff cannot maintain this claim against Defendants as they are not designated 'administrators' under ERISA"). Plaintiff's claim for statutory penalties must be dismissed.

## CONCLUSION

For the reasons articulated above, Anthem's Partial Motion to Dismiss Complaint [ECF No. 24) is GRANTED, and DLA Piper's Motion to Dismiss Plaintiff's Second and Third Causes of

Action (ECF No. 25) is GRANTED.  Accordingly, Plaintiff's Second and Third Causes of Action are DISMISSED with prejudice. Plaintiff's First Cause of Action for Recovery of Benefits remains.

DATED this 13th day of March, 2023.

                                      BY THE COURT:

                                      _____
                                      DALE A. KIMBALL
                                      United States District Judge