# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| L.L., individually and on behalf of J.L. a minor,<br><br>  Plaintiff,<br><br>vs.<br><br>**ANTHEM BLUE CROSS LIFE and HEALTH INSURANCE COMPANY,** and the **DLA PIPER WELFARE BENEFIT PLAN,**<br>  Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:22-CV-00208-DAK<br><br>Judge Dale A. Kimball |

  This action arises under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et. seq., and is before the court on the parties' cross-motions for summary judgment. On February 1, 2024, the court held a hearing on these motions. At the hearing, Andrew Somers and Samuel Hall represented L.L. and J.L. (collectively, "Plaintiffs"). Nathan Marigoni and Angela Shewan represented Anthem Blue Cross Life and Health Insurance ("Anthem"), and Jennafer Tryck, Heather Richardson, and Scott Petersen represented DLA Piper and DLA Piper Welfare Benefit Plan (collectively, "Defendants"). The court took the matter under advisement. Now being fully informed, the court issues the following Memorandum and Decision.

## BACKGROUND

  Plaintiff L.L. is a participant in the DLA Piper Welfare Benefit Plan, a self-funded plan ("the Plan") offered by his former employer, DLA Piper LLP. Defendants are DLA Piper LLP

and Anthem Blue Cross Life and Health Insurance. Plaintiffs seek an award of benefits on behalf of his daughter, J.L. J.L. participated in approximately two months of "wilderness therapy" at Wingate Wilderness Therapy ("Wingate"). Wingate is a licensed treatment facility located in Kane County, Utah, which provides sub-acute treatment to adolescents with mental health, behavioral, and substance abuse problems. J.L. was admitted to Wingate on June 7, 2019, to address issues related to depression, anxiety, self-harm, suicidality, anger, drug abuse, and school performance.

L.L. discharged J.L. from Wingate in August 2019, and despite failing to seek precertification, Plaintiffs filed a claim for $33,000 in benefits on J.L.'s behalf. Defendants denied Plaintiff's claim after determining that J.L.'s treatment at Wingate was not covered under the Plan. In a letter dated December 21, 2022, Defendants informed Plaintiffs that:

> This treatment is not approvable under the plan clinical criteria because there is no proof or not enough proof it improves health outcomes. For this reason, the request is denied as investigational and not medically necessary. There may be other settings to help you, such as outpatient treatment. You may want to discuss these with your doctor. It may help your doctor to know we reviewed this request using the plan medical policy Wilderness Programs (Med. 00122).

Rec. 165, 2473. Plaintiffs appealed this denial of J.L.'s treatments, and asserted that outdoor behavioral care was a necessary and appropriate intervention to treat J.L. and was not experimental or investigative. To support this assertion, Plaintiffs provided Defendants with peer-reviewed literature and a letter from Dr. Michael Gass, Ph.D., demonstrating that outdoor behavioral health treatment is proven, safe, and effective. Dr. Gass, who is an expert in the outdoor behavioral health field, stated that the exclusions section of the insurance policy did not list outdoor behavioral health programs as an excluded service. The policy did exclude, however, coverage for experimental or investigational services which it defined as:

> Experimental procedures are those that are mainly limited to laboratory and/or animal research.

and

> Investigative procedures or medications are those that have progressed to limited use on Humans, but which are not widely accepted as proven and effective within the organized medical community.

Dr. Gass wrote that outdoor behavioral health programs were not included in these definitions, as they are accepted as proven and effective within the medical community. Wingate is licensed by the State of Utah and was also accredited by both the Association for Experimental Education and the Outdoor Behavioral Health Council. Dr. Gass further contended that outdoor behavioral health care was a necessary and appropriate intervention to treat J.L. and was not an experimental or investigational service. He argued that contrary to Anthem's claim, the peer-reviewed literature demonstrates that outdoor behavioral health is proven, safe, and effective.

Dr. Gass also argued that most of the studies cited by Anthem to disprove the efficacy of wilderness programs did the opposite and "actually support the use of wilderness therapy in their findings." Rec. 1155–57. He also noted that these studies had several flaws, and some of them examined factors that were not applicable to the treatment J.L. received, such as the effects of wilderness programs on individuals suffering from traumatic brain injuries and cancer.

L.L. also included an independent review decision from Federal Hearings and Appeal Services, Inc. in which the reviewer wrote that outdoor behavioral health programs were proven and effective treatment services, were not experimental, and even had their own revenue code from the National Uniform Billing Committee. L.L. also included another decision by external reviewer Permedion which stated that wilderness treatment was medically necessary and that

3

"[t]here is a significant body of literature establishing its appropriateness . . . and it is essentially a form of residential treatment level of care." Rec. 1159.

In a letter dated May 11, 2021, Defendants upheld the denial of payment for J.L.'s treatment. Rec. 0002–0007; 1264. The letter explained that the services J.L. received at Wingate were "considered investigational as defined in the section titled MEDICAL CARE THAT IS NOT COVERED." *Id*. Defendants stated that they had "received a recommendation to uphold the denial from an External Reviewer Medical Doctor, who is board certified and specialized in Psychiatry," and that they had "reviewed all the information that was given [to them by Plaintiff] with the first request for coverage." *Id*. They reiterated that the treatment was not approvable under the Plan because "there is no proof or not enough proof it improves medical outcomes." *Id*. As a result, Defendants concluded that the denial was upheld, and the claim was denied as "investigational and not medically necessary." *Id*. Defendants also informed Plaintiffs that this decision was reached "using the plan medical policy Wilderness Programs (Med.00122)." *Id*.

In response to this letter, Plaintiffs requested that the denial be reviewed by an external review agency. In a letter dated November 24, 2021, Plaintiffs were informed that the external reviewer had upheld the denial of payment. Rec. 74. The reviewer explained that wilderness programs "continue to be the subject of ongoing research and study," and that they are not widely accepted as proven and effective. *Id*.

Plaintiffs brought suit and both parties are now moving for summary judgment. Plaintiffs argue that the standard of review should be *de novo* and that Defendants did not act reasonably because (1) Defendants' decision was based on an internal policy and not the Plan itself, (2) J.L.'s care at Wingate was not investigational, and (3) Defendants did not adequately engage in meaningful dialogue with Plaintiffs during the prelitigation period. Defendants argue against

4

these assertions. They argue that the standard of review should be arbitrary and capricious and that under this standard, they acted reasonably.

## STANDARD OF REVIEW

Summary judgment will be granted when a movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute as to a material fact is only genuine if there is sufficient evidence for a reasonable factfinder to enter judgment for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Under ERISA, motions for summary judgment are "merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *Easter v. Hartford Life & Accident Ins. Co.*, No. 2:19- cv-612, 2021 WL 3709933, at *1 (D. Utah Aug. 20, 2021) (unpublished) (quoting *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life. Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010)). Instead, the court "acts as an appellate court and evaluates the reasonableness of a plan administrator or fiduciary's decision based on the evidence contained in the administrative record." *Easter*, 2021 WL 3709933, at *1 (quoting *Hancock v. Metropolitan Life Ins. Co.*, No. 2:06-cv-882, 2008 WL 2996723, at *4 n.2 (D. Utah Aug. 1, 2008)).

## DISCUSSION

### I.     Standard of Review

Where a plan gives the administrator discretionary authority, the standard of review employed by a court when reviewing an ERISA benefits claim is whether the denial of benefits was "arbitrary and capricious." *Tracy O. v. Anthem Blue Cross Life & Health Ins. Co.*, 807 F. App'x 845, 853–54 (10th Cir. 2020). While a grant of discretionary authority must be couched in terms that are unambiguous, courts have been liberal in "construing language to trigger the more deferential standard of review under ERISA." *Hodges v. Life Ins. Co. of N. Am.*, 920 F.3d 669, 676 (10 Cir. 2019).

The Tenth Circuit does not require "any magic words, such as 'discretion,' 'deference,' 'construe,' or 'interpret' to find discretionary authority." *Stacy S. v. Boeing Co. Emp. Health Benefit Plan (Plan 626)*, 344 F. Supp. 3d 1324, 1336 (D. Utah 2018). Instead, the Tenth Circuit has held that a plan grants discretionary authority where, among other things, the plain language authorizes the claims administrator to determine medical necessity, *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1259 (10th Cir. 1998), or to determine that a procedure is "experimental." *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir. 1996).

Here, although the Plan does not contain a discretionary clause, it still clearly grants discretionary authority to the claims administrator. The Plan defines "Medically Necessary" as "procedures" or "services" that the "*claims administrator* determines to be . . .appropriate and necessary for the diagnosis or treatment of the medical condition." Rec. 0425. The Plan also explains that the claims administrator "evaluate[s] the claim information and determine[s] the accuracy and appropriateness of the procedure [. . .] included in the submitted claim." Rec. 0361. Similar statements are present throughout the Plan.

Plaintiffs argue that this language "simply directs who makes the initial [] decision," regarding plan language, but that this language "cannot [be] stretched into a conveyance of discretionary authority." *Hodges*, 920 F.3d at 679. This argument, however, is not persuasive. This language does indicate who will make the claims decision, and it also confers authority to the claims administrator. It allows them to evaluate and determine the appropriateness and accuracy of a procedure and determine whether it is medically necessary. It is well established that language such as this is sufficient to grant discretionary authority. *See McGraw v. Prudential Ins. Co. of America*, 137 F.3d 1253, 1259 (10th Cir. 1998); *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124 (10th Cir. 2011).  Thus, the standard of review is arbitrary and capricious.

II.     **ERISA Claim**

Under the arbitrary and capricious standard, a claims administrator's denial of benefits will be upheld if "reasonable and supported by substantial evidence." *D.K. v. United Behav. Health*, 67 F.4th 1224, 1235 (10th Cir. 2023).  Substantial evidence means "more than a scintilla but less than a preponderance." *Rekstad v. U.S. Bancorp.*, 451 F.3d 1114, 1119–20 (10th Cir. 2006).   The denial must "reside[] somewhere on a continuum of reasonableness—even if on the low end." *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006).  Courts consider whether the decision was "(1) the result of a reasoned and principled process, (2) is consistent with any prior interpretations by the plan administrator, (3) is reasonable in light of external standards, and (4) is consistent with the purposes of the plan." *D.K.* 67 F.4th at 1236. In conducting this review, the court may only consider the "evidence and arguments that appear in the administrative record," and, therefore, can only consider the rationale asserted by the claims

7

administrator in the administrative record. *See Sandoval v. Aetna Life & Cas. Ins. Co.*, 957 F.2d 377, 380 (10th Cir. 1992).

Claims administrators are also required to comply with ERISA's procedural requirements. Thus, an administrator initially denying a claim for benefits must provide the claimant with the following information: (1) "The specific reason or reasons for the adverse determination;" (2) "Reference to the specific plan provisions on which the determination is based," (3) "A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;" and (4) For denials based on lack of necessity, "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances." 29 C.F.R. § 2560.503-1(g)(i)–(iii) and (v). Additionally, administrators must consider "all comments documents, records, and other information submitted by the claimant relating to the claim." 29 C.F.R. § 2560.503-1(h)(2)(iv).

In this case, Plaintiffs raise three reasons as to why Defendants' denial was arbitrary and capricious: (1) The denial was made based on an internal medical policy and not based on the Plan itself, (2) J.L.'s care was not experimental or investigative, and (3) Defendants failed to engage in meaningful dialogue with Plaintiff. Each issue is addressed below.

### A. The Internal Policy

In their denial letters, Defendants explain that they reviewed Plaintiff's request "using the plan medical policy Wilderness Programs (Med.00122)." Rec. 165. Claim administrators may rely on medical polices that are "properly incorporated into the plan." *Doe v. Intermountain Healthcare, Inc.*, No. 2:18-cv-807-RJS-JCB, 2023 WL 5395526 at *18 (D. Utah, Aug. 22, 2023). Policies are incorporated into a plan when plan documents clearly authorize the claims

8

administrator to use and rely on them in making claim determinations and communicates this to members. *Id*.

For example, in *Fortier v. Anthem*, the Ninth Circuit found that a medical policy had been incorporated into a plan when the plan stated that the insurance company "'uses clinical guidelines, such as medical policy, clinical guidelines, and other applicable policies . . . to help make medical necessity decisions." *Fortier v. Anthem, Inc. et al.*, 2021 WL 5277099, at *1 (9th Cir. Nov. 12, 2021). Similarly, in the *Doe* decision, the court found that a medical policy was incorporated into the plan where the plan stated that claim administrators may rely on "'medical policies to serve as guidelines for coverage decisions.'" *Intermountain Healthcare, Inc.*, 2023 WL 5395526 at *18.

Here, the Plan notified members that Anthem "uses clinical guidelines, such as medical policy . . . to help make medical necessity decisions." Rec. 402. It also explained that "[m]edical policies . . . reflect the standards of practice and medical interventions identified as proper medical practice" and that the "*claims administrator* reserves the right to review and update these clinical coverage guidelines from time to time." *Id*. Based on this language, it follows that claims administrators are permitted to rely on medical policies, like the Wilderness Programs medical policy, to aid in their determination of coverage. The language clearly authorizes this use and communicates it to members.

Plaintiffs argue that the Plan language does not sufficiently suggest incorporation because it states that claims administrators may use medical policies to "help" them in their determination of coverage but not actually "determine" coverage. They argue that claims administrators are, therefore, unable to determine medical necessity under the plan and can only *help* in doing so. This argument is confusing and futile. As explained above, the Plan explicitly authorizes the

claims administrator to determine medical necessity. Whether a claims administrator is permitted to rely on medical policies does not change the fact that they are authorized to make medical decisions in the first place. Thus, it follows that the Wilderness Programs medical policy was incorporated into the plan, and the denial was, therefore, based on the Plan.

     B. **Defendants Failed to Engage in Meaningful Dialogue or Dispute Plaintiffs Assertion That J.L.'s Care Was Not Investigational as Defined in the Plan.**

The Plan explains that "[n]o payment will be made . . . for expenses incurred for or in connection with . . . " (1) "[s]ervices or supplies that are not medically necessary," and (2) "any experimental or investigative procedure or medication." Rec. 477. The Plan defines an "experimental or investigative procedure" as one that is "mainly limited to laboratory and/or animal research" or has "progressed to limited use on humans, but [is] not widely accepted as proven and effective within the organized medical community." Rec. 252–53. At the time of J.L's stay at Wingate the Plan stated that, "wilderness programs [are] considered investigational and not medically necessary for all indications." Rec. 0502. The Policy details the rationale for this conclusion, relying on a survey of peer-reviewed medical literature and government and medical society publications. Rec. 0502, 0504–0506. Additionally, under the Plan, the term "procedure" refers to any treatment or service for which a member seeks reimbursement under the Plan. Rec. 0361. Thus, J.L.'s stay at Wingate falls under the definition of "procedure" for purposes of the Plan.

Accordingly, when Defendants denied Plaintiffs appeals, they explained that "[t]he services are considered investigational as defined in a section titled MEDICAL CARE THAT IS NOT COVERED . . . there is no proof or not enough proof [Wilderness Programs] improves health outcomes." Rec. 0002–03. A review of Defendant's denial letters establishes that the claim administrators relied solely on Anthem's Wilderness Programs policy to support denial

10

based on the Plan's exclusion for experimental or investigative services. (Rec. 0002 ("It may help your doctor to know we reviewed this request using the plan medical policy Wilderness Programs (Med.00122)."); Rec. 502 ("Wilderness programs are considered investigational and not medically necessary for all indications.").

When Plaintiffs appealed, they submitted extensive information supporting the efficacy of J.L.'s treatment at Wingate and showing that the care she received there was not investigational under the terms of the Plan. L.L. pointed out that Wingate was a licensed and accredited Outdoor Behavioral Health ("OBH") facility and outlined how the studies cited by Anthem in the internal policy for wilderness programs actually supported the efficacy of OBH treatment for mental health care. The only studies cited in the Policy that did not improve mental health outcomes were not analogous the J.L.'s treatment as they focused on physiological issues, like cancer treatment and treatment of traumatic brain injuries, rather than psychological issues like those affecting J.L. The remaining studies all concluded that wilderness programs were an effective method of treatment.

L.L. also provided the opinion of Dr. Michael Gass, Ph.D., to support this assertion. He also provided several decisions from independent review organizations outlining why this type of care should not be considered investigative. He submitted a substantial body of academic literature supporting the efficacy of treatment centers like Wingate to Defendants. He also asserted that OBH Programs were assigned their own billing code by the National Uniform Billing Committee ("NUBC"), and that "[n]o such code would have been implemented if the services were deemed investigative or experimental." Rec. 1264–65.

ERISA requires claims administrators to "'engage' with [Plaintiff's arguments]

11

by providing some 'explanation for their disagreement.'" *K.D. v. Anthem Blue Cross & Blue Shield*, No. 2:21-cv-343-DAK-CMR, 2023 U.S. Dist. LEXIS 167836, at *20 (D. Utah Sep. 20, 2023). This explanation must actually "grapple [ . . . ] with the contents" of what a plaintiff submits. *Id*. at *18. Insurers must not "shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no more evidence in the record to refute that theory." *Id*. Administrators must provide claimants with a "discussion of the decision, including an explanation the basis for disagreeing with or not following the views presented by the claimant." *D.K.*, 67 F.4th at 1237. It is their duty to "address medical opinions, particularly those which may contradict their findings. This is the core of meaningful dialogue." *Id*. at 1241.

Accordingly, it is not enough for Defendants to simply insist that benefits were only denied after they "reviewed all the information that was given to [them]." Rec. 0079. Meaningful dialogue under ERISA requires fiduciaries to "'*address* medical opinions, particularly those which may contradict their findings' *in their denial letters*." *Anne A. v. United Healthcare Ins. Co.*, No. 2:20-00814-JNP-DAO, 2024 WL 1307168, at *8 (D. Utah Mar. 26, 2024). Thus, an encompassing statement indicating that Defendants reviewed all the information provided by Plaintiffs is not sufficient. Instead, the language of their denial letters must "grapple . . . with the contents" of the evidence Plaintiffs submitted. *See id*; *K.D.*, 2023 U.S. Dist. LEXIS 167836, at *18.

Here, Defendants failed to engage in meaningful dialogue with Plaintiffs or to successfully address and refute Plaintiffs' argument that J.L.'s care was not investigational under the definition in the Plan. Defendants failed to address any of the information that Plaintiffs submitted in their appeal. Instead, Defendants attempted to satisfy this requirement by using an

12

all-encompassing statement that they had, in fact, "reviewed all of the information that was given to [them.]" Rec. 0003. As explained above, this is not enough. Furthermore, in their denial letters Defendants merely restated their original conclusions in denying the claims, relying on the contents of the policy and failed to even mention, let alone address, any of the contradictory information Plaintiffs submitted.

Defendants argue that they are not required to address any of the information Plaintiffs submitted because none of it came from one of J.L.'s treating physicians. Defendants argue that, under *D.K.* they are only required to address contrary arguments that are asserted by a treating physician. Defendants are correct that the facts of *D.K.* dealt with treating physicians, but it did not limit meaningful dialogue to treating physicians. *D.K.*, 67 F.4th at 1236. Instead, it clarified what is expected of fiduciaries when they are faced with contradictory medical opinions, including those of treating physicians. *See id*. at 1238–39.

Furthermore, as Defendants' letters demonstrate, Defendants outsource their review process to External Review Medical Doctors who they hire. It does not stand then, that Plaintiffs would be limited to opinions and documents from treating physicians while Defendants are permitted to hire doctors who do not treat or even meet the patient at issue and then rely on their opinion. Plaintiffs are also permitted to produce evidence from non-treating physicians and individuals in the medical field and Defendants must grapple with these opinions, especially when they are contradictory. *See Anne A.*, 2024 WL 1307168, at *8 (explaining that fiduciaries must address "medical opinions" that plaintiffs submit). Non-treating physicians are sometimes even more acquainted with medical issues than treating physicians. Dr. Gass, for example, specializes in outdoor behavioral therapy. Who better to dispute whether such care is investigational than a doctor who has dedicated his life to the study of such care.

13

Finally, in their denial letters, Defendants explain that the Plan excludes residential treatment in a wilderness program because "under the plan clinical criteria . . . there is no proof or not enough proof that it improves health outcomes." Rec. 0001–0004; 0037–0039; 0070–76, 0470. As the facts demonstrate, Plaintiffs provided Defendants with ample evidence that is contrary to this statement. When they failed to properly engage in meaningful dialogue and address Plaintiffs information showing that J.L.'s treatment at Wingate was not investigational, they failed to establish that the care was in fact investigational. The meaningful dialogue requirement holds fiduciaries responsible. The medical field is constantly evolving and, therefore, discussions surrounding what kind of care is "investigational" are important, and contradictory medical opinions must be considered. *See Anne A.*, 2024 WL 1307168, at *8*; *See also S.H.*, 2023 WL 8530123, at *3–4.

"Under recent Tenth Circuit precedent, a decision to deny benefits shall be deemed arbitrary and capricious when the reviewer fails to explain how the conclusion was reached or when an administrator inappropriately relied on certain evidence while disregarding other evidence, or where the denial letter lacked reasoned analysis and relied on conclusory statements." *S.H. v. Cigna Health and Life Ins. Co.*, No. 2:22-cv-552-TC, 2023 WL 8530123, at *6 (D. Utah Dec. 8, 2023). A full and fair review of a denial of benefits must include knowing what evidence the decision maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering a decision. *D.K.*, 67 F.4th 1224 at 1236. In other words, Insurers cannot "shut their eyes to readily available information . . . [that may] confirm the beneficiary's theory of entitlement." *D.K.*, 67 F.4th at 1237.

14

Here, Defendants acted arbitrarily and capriciously. Defendants failed to explain how they reached their conclusion besides relying on the Wilderness Program Policy, and they completely disregarded the evidence Plaintiffs submitted. They also did not address why the care J.L. received at Wingate was investigational despite Plaintiffs evidence. The denial letters did not contain a reasoned analysis for its unexplained conclusions. ERISA requires Defendants to engage in meaningful dialogue with Plaintiffs and provide them with a reasoned analysis as to why their claims are being denied. In situations such as this, where insurers are relying on a policy that deems the treatment as "investigational," denial letters must grapple with the evidence that plaintiffs provide and explain why, in spite of that evidence, the treatment was investigational and not medically necessary. Insurers cannot just say something is investigational because of a policy and refuse to engage in meaningful dialogue when plaintiffs present contradictory information. *See Anne A.*, 2024 WL 1307168, at *3.  Here, Defendants did just this, and, in doing so, they not only failed to engage in meaningful dialogue but also failed to prove that the care J.L. received at Wingate was investigational. *See Id.* ("insurers 'ha[ve] the burden of showing that a loss falls within an exclusionary clause of the policy.'") (quoting *Pittman v. Blue Cross & Blue Shield of Okla.*¸ 217 F.3d 1291, 1298 (10th Cir. 2000)).

Thus, because of their failure to engage in meaningful dialogue and establish that the care J.L. received was investigative, Defendants acted arbitrarily and capriciously in denying Plaintiffs benefits.

### III. BENEFITS

"A court may remand for further administrative review if it determines the administrator's flawed handling could be cured by a renewed evaluation to address, for example, a 'fail[ure] to make adequate findings or to explain adequately the grounds for a decision.'" *D.K.*, 64 F.4th at 1243 (quoting *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288 (10th Cir. 2002)). When an insurance company has denied a plaintiff benefits, failed to consider all of the evidence before it, failed to adequately explain why it denied the plaintiff claims, and failed to engage adequately with plaintiffs "the appropriate remedy is to remand [the p]laintiffs' claims." *David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1316 (10th Cir. 2023). Here, Defendants failed to consider all of the evidence and adequately engage with Plaintiffs. Thus, remand is appropriate.

### CONCLUSION

Based on the above reasoning, Plaintiffs' Motion for Summary Judgment [ECF No. 56] is GRANTED IN PART and DENIED IN PART. Defendants arbitrarily and capriciously denied Plaintiffs benefits, but the court declines to award benefits. Instead, this matter is REMANDED to the Defendants for further consideration consistent with this Decision and Order. Defendants' Motion for Summary Judgment [ECF No. 55] is DENIED.

DATED this 2nd day of May, 2024.

BY THE COURT:

DALE A. KIMBALL
United States District Judge